LOUIS M. BUBALA III, ESQ.
Nevada Bar #8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone:  775.322.7400
Facsimile:  775.322.9049
Email:  lbubala@armstrongteasdale.com

**ELECTRONICALLY FILED ON**
**January 4, 2011**

Attorneys for Branch Banking and Trust Company

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>BIG STUFF STORAGE LLC,<br><br>　　　　Debtor.<br><br>_____ | Case No.:  BK-N-10-50471-GWZ<br>Chapter:  11<br><br>**RESPONSE TO MOTION TO CONVERT OR DISMISS CASE, WITH CERTIFICATE OF SERVICE**<br><br>Hearing Date:  1/18/12<br>Hearing Time:  2:00 p.m. |

Branch Banking & Trust Co. ("BB&T") joins the U.S. Trustee's motion to the extent it seeks to dismiss this case, and opposes the motion to the extent it seeks to convert the case to Chapter 7. Debtor has repeatedly defaulted on its obligations before its bankruptcy, during the case, and since confirmation.  BB&T has preserved its rights post-confirmation.  The situation has not improved, and it recently recorded a notice of default to execute on Debtor's property.  The conversion of this case in Chapter 7 only will add costs and delay for the parties, without any benefit for other creditors.

The response is based on the following points and authorities, the attached exhibits, and other matters previously presented to this court.

**I.  Debtor's Pre-Petition Defaults and Secured Obligations**

1.　　　　Debtor filed their Chapter 11 petition on February 18, 2010 (Ct. Dkt. #1).  Debtor defaulted prepetition on its secured note with BB&T, had not made a payment since July 2009, and filed the petition less than 24 hours before a scheduled foreclosure sale on February 19, 2010.  Ct. Dkt. #28, Nikonchuk Decl.; **Exhibit 1**, Notice of Sale.

2.　　　　BB&T was the largest creditor in the case, with a secured claim of $958,000 accounting for more than half of all of Debtor's liabilities (Ct. Dkt. #1, Schedules; Cl. Reg. #7).  It

was secured by a first-priority deed of trust against Debtor's only significant asset, its self-storage business (Ct. Dkt. #1, Schedules; Cl. Reg. #7). BB&T maintained its debt and lien under the terms of Debtor's confirmed plan of reorganization (Ct. Dkt.#s 20 & 80, Plan & Order).

3.      Debtor owed $976,641.37 to BB&T through December 30, 2010, such that it owed $5,428.49 for its monthly post-confirmation payment (Ct. Dkt. #84, Mtn. to Compel Payments at 4:9-13 & Ex. 3; Ct. Dkt. #86, Bubala Decl.). Through December 31, 2011, the debt is $992,421.

4.      BB&T also holds a security interest in Debtor's cash collateral (Cl. Reg. #7; see Ct. Dkt. #15, Debtor's Motion to Use Cash Collateral). BB&T will not consent to the use of cash collateral in the event that this case is converted to Chapter 7.

**II.  Debtor's Post-Petition Defaults**

5.      Debtor did not make any loan payments to BB&T for March, April and May 2010, but made retroactive adequate protection payments in June 2010 after receiving court authority to use BB&T's cash collateral (Ct. Dkt. #38, order; Ct. Dkt. #43, Nikonchuk Decl.).

6.      Even after the Court authorized the use of cash collateral on June 2, 2010, Debtor violated the order because it failed to make adequate protection payments for June and July 2010 (Ct. Dkt. #42-43, Reply in Support of Mtn for Stay Relief & Nikonchuk Decl.). Debtor only made the payments after BB&T brought the violations to the Court's attention.

7.      Debtor also failed to make two quarterly property tax payments post-petition until BB&T advised Debtor that it would be forced to advance the funds in the month prior to the confirmation hearing (Ct. Dkt. #64, Plan Obj. at 4 & Ex. 2).

**III.  Debtor's Post-Confirmation Defaults**

8.      Debtor confirmed a plan that required Debtor to make monthly payments to BB&T by the 15th of each month, and to remain current on its property taxes (Ct. Dkt. #80, Order filed Dec. 30, 2010). If Debtor defaulted, the plan required BB&T to issue a letter notice of default with a 14-day cure provision before BB&T could take additional steps, such as recording a notice of default. *Id.* To the extent Debtor was unable to make payments out of its operations, Debtor asserted that its principals "are willing and able to contribute such sums as are necessary in the event there is any shortfall in making the payments to BB&T" (Ct. Dkt. #70, Brf. in Support of Confirmation at 5:11-12). Its principals, Mark, Giselle, Alan and Elizabeth Huber, also are personal guarantors of Debtor's

debt owed to BB&T.  **Exhibit 2**, Guarantee Agreements.

     9.     Debtors have repeatedly defaulted on their obligations under the plan.

**A.  Debtor's Property Tax Defaults**

     10.     Debtor failed to make property tax payments due on January 3, 2011, and March 7, 2011.  BB&T sent letter notices of default on March 18, 2011, and July 20, 2011.  **Exhibits 3-4**. Debtor did not respond.  Nearly five months later, BB&T recorded a notice of default on August 11, 2011.  **Exhibit 5**.

     11.     Debtor made tax payments on September 2 and 20, 2011.  **Exhibit 6**, Washoe County Property Tax Payment History.  The payments equaled the obligation for the two quarterly tax payments after penalties and interest.  However, as BB&T explained to Debtor, the payments did not cure the default.  **Exhibit 7**, 9/27/11 Bubala-Smith Ltr.  The payments were not made within 35 days of the date of service of the notice of default; did not include the costs associated with the notice of default; and did not cure a recurring default for failure to pay subsequent property taxes.  *Id.*[1]

     12.     Debtor failed to pay property taxes due on August 15, 2011, and October 3, 3011. BB&T sent letter notices of default on August 16, 2011, and November 7, 2011.  **Exhibits 8-9**. Debtor did not respond to either letter.  On December 12, 2011, BB&T advanced the funds and paid the property tax bill.  **Exhibit 6**, Washoe County Property Tax Payment History.

**B.  Debtor's Payment Defaults**

     13.     Debtor failed to make its monthly loan payment due on October 15, 2011.  BB&T sent a letter notice of default on October 20, 2011.  **Exhibit 10**.  Debtors mailed a check on October 21, 2011, which was received by BB&T on October 25, 2011.

     14.     Debtor failed to make its monthly loan payment due on November 15, 2011. Debtor's principal Alan Huber attempted to make a late payment later in the month, but BB&T declined to accept it because of recorded notice of default.  BB&T later advised both Mr. Huber and debtor's counsel John Gezelin that it would accept a payment.  When no response was received,

---

[1] The online record of property tax payments reflects Debtor's second payment was made on September 20, 2011, but undersigned counsel was previously advised by a call to the treasurer's office that the payment was made on September 21, 2011, or on the 36th day.  Regardless of the actual day of the payment, Debtor still did not cure the default for the other two reasons cited.

BB&T sent a letter notice of default on December 1, 2011.  **Exhibit 11**.

15.     Debtor failed to make its monthly loan payment due on December 15, 2011. BB&T sent a letter notice of default on December 22, 2011.  **Exhibit 12**.  Debtor has not responded.

### C.  Debtor's Default Due to Bankruptcy Filing of Guarantors

16.     On October 4, 2011, Debtor's guarantors Mark and Giselle Huber filed a Chapter 7 bankruptcy petition.  *In re Huber*, Case No. 11-34444 (Bankr. D. Utah).  The Hubers did not schedule their obligation under their guarantee of Debtor's debt to BB&T, but BB&T filed a claim (Huber Cl. Reg. #4).

17.     The Hubers scheduled approximately $320,000 in assets and more than $1 million in liabilities (Huber Ct. Dkt. #3).  It is clear from the schedules that notwithstanding Debtor's brief in support of its plan, Mark and Giselle Huber did not have the financial ability to honor their guarantee or fund the plan by making Debtor's payments due to a shortfall in operational income.

18.     The bankruptcy filing of the guarantors constitutes a default of the deed of trust (Cl. Reg. #7).  BB&T sent a letter notice of default on November 7, 2011.  **Exhibit 13**.

19.     On December 8, 2011, debtor's counsel Alan Smith called undersigned counsel, stating that Debtor is reluctant to make any additional payments if BB&T was going to proceed under the default based on the guarantors' bankruptcy.  Mr. Smith advised that Debtor wanted to continue making payments if BB&T would work with it rather than proceed with the default.  Undersigned counsel conveyed the request to BB&T and responded to Mr. Smith the following day.  BB&T advised that it already had extended significant patience with Debtor; that Debtor had not done anything to provide BB&T with confidence in Debtor's business operations; and that if it wanted the Bank to work with it, Debtor would need to come current and remain so on all loan, property tax and insurance payments.  BB&T has not received any response.

### D.  Debtor's questions about purchasing the note have not moved beyond a basic inquiry

20.     Mr. Smith also stated that there was an unidentified third party interest in purchasing BB&T's note.  Undersigned counsel responded that BB&T would sell it, but not at a discount.  BB&T has not received further communication from Debtor's counsel on this point.

21.     Undersigned counsel also was contacted December 12, 2011, by YaYa Jackoby, a real estate agent representing Big Stuff and an unidentified third party seeking to purchase BB&T's

note.  Undersigned counsel again advised that BB&T is willing to sell the note, but not at a discount. BB&T has not received any further substantive communication from Mr. Jackoby.

### E.  BB&T recorded a new Notice of Default

22.        BB&T rescinded the prior notice of default and recorded a new notice of default on December 22, 2011.  **Exhibit 14**.  The notice of default is based on (1) the failure to make the loan payment due on November 15, 2011; (2) the failure to make the property tax payments for the first and second quarter of 2011-12, and BB&T advancement of the funds to pay the taxes; and (3) the bankruptcy filing by guarantors Mark & Giselle Huber.  *Id.*

## IV.  Debtor's Case Should Not Be Converted to Chapter 7

23.        Given Debtor's complete inability to comply with its financial obligations, BB&T requests this case be dismissed.  Although the plan terms remain in place, BB&T seeks dismissal so it is "free to enforce [its] plan-created contractual rights in the appropriate state court forum" rather than linger in a Chapter 7 bankruptcy.  *In re Page*, 118 B.R. 456, 460 (Bankr. N.D. Tex. 1990).

24.        A Chapter 7 bankruptcy serves no purpose.  Debtors have had repeated opportunities pre-petition, post-petition and post-confirmation to comply with the loan terms or to refinance the debt.  They have done neither.  BB&T has recorded a notice of default and should be allowed to proceed with a foreclosure sale.

25.        A Chapter 7 case will not provide any greater rights or benefits to Debtor or its creditors.  Any purchaser will have to exceed BB&T's credit bid regardless of whether there is sale through foreclosure or in a Chapter 7 bankruptcy.  In fact, a Chapter 7 likely will be detrimental to other creditors because the amount of BB&T's debt, and its credit bid, will increase with the delay and cost associated with the Chapter 7 case.

Dated this 4th day of January, 2012            ARMSTRONG TEASDALE LLP

By: /s/Louis M. Bubala III

LOUIS M. BUBALA III, ESQ.

Counsel to BB&T

# CERTIFICATE OF SERVICE

1. On January 4, 2012, I served the following document(s):

**RESPONSE TO MOTION TO CONVERT OR DISMISS CASE, WITH CERTIFICATE OF SERVICE**

2. I served the above-named document(s) by the following means to the persons as listed below:

   ■ a. ECF System (attach the "Notice of Electronic Filing" or list all persons and addresses):

SALLIE B ARMSTRONG on behalf of Creditor Z SERVICING, INC.
sarmstrong@downeybrand.com, reno@downeybrand.com

LOUIS M. BUBALA on behalf of Creditor BRANCH BANKING AND TRUST COMPANY
lbubala@armstrongteasdale.com, bsalinas@armstrongteasdale.com

JANET L. CHUBB on behalf of Creditor BRANCH BANKING AND TRUST COMPANY
bsalinas@armstrongteasdale.com

MICHELLE N. KAZMAR on behalf of Creditor Z SERVICING, INC.
mkazmar@downeybrand.com, reno@downeybrand.com

ALAN R SMITH on behalf of Debtor BIG STUFF STORAGE, LLC
mail@asmithlaw.com

U.S. TRUSTEE - RN - 11
USTPRegion17.RE.ECF@usdoj.gov

   □ b. United States mail, postage fully prepaid (list persons and addresses):

   □ c. Personal Service (list persons and addresses)
   I personally delivered the document(s) to the persons at these addresses:

   □ d. By direct email (as opposed to through the ECF System) (list persons and email addresses):

   □ e. By fax transmission (list persons and fax numbers):

   □ f. By messenger:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 4th day of January, 2012.

 Barbara Salinas                          /s/ Barbara Salinas
Name                                      Signature

# EXHIBIT 1

# EXHIBIT 1

DOC #3842359
01/25/2010 01:21:05 PM
Electronic Recording Requested By
STEWART TITLE OF NEVADA RENO
Washoe County Recorder
Kathryn L. Burke – Recorder
Fee: $16.00  RPTT: $0
Page 1 of 3

**APN:** 082-290-19
**Recording Requested by:**
Stewart Title of Nevada Holdings Inc.

**Mail Tax Statements to:**

**When recorded mail to:**
Stewart Title of Nevada Holdings Inc.
1070 Caughlin Crossing
Reno, NV  89519

## NOTICE OF TRUSTEE'S SALE
### NO.: 1022871-02

WHEREAS, Stewart Title of Nevada Holdings, Inc., a Nevada corporation, is trustee under Deed of Trust dated  May 19, 2006 executed by Big Stuff Storage, LLC, a Nevada limited liability company, as Trustor in favor of Colonial Bank, as Beneficiary, and recorded May 26, 2006, as Instrument No. 3392909 of Official Records of Washoe County, Nevada, and securing among other obligations, one promissory note in the original principal amount of $875,000.00; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by Branch Banking and Trust Company, successor in interest to Colonial Bank by acquisition of assets from the FDIC as Receiver for Colonial Bank;

WHEREAS, default has been made in the payment of the debt evidenced by the promissory note for which said deed of trust was given as security, and said beneficiary did cause a Notice of Default and Election to Sell under said deed of trust to be recorded in the office of the County Recorder of Washoe County, Nevada, on September 30, 2009, as Instrument No.  3807028;

WHEREAS, Stewart Title of Nevada Holdings Inc., a Nevada corporation, on February 19, 2010 at 11:30 AM, will sell at public auction, to the highest bidder CASH,  lawful money of the United States of America, at the Virginia Street entrance of the Washoe County Courthouse located at the corner of Virginia Street and Court Street, Reno, NV, all right, title and interest now held by it under said Deed of Trust in the property situate in the County of Washoe, State of Nevada, described as follows:

See Exhibit "A" attached hereto and by reference made a part hereof for complete legal description.

Commonly known as: 7875 N. Virginia Street  Reno,NV.
APN#: 082-290-19

WHEREAS, Beneficiary has made demand upon said Trustee that said Trustee proceed to sell the land and premises hereinafter described.

TOGETHER WITH, the improvements thereon and all and singular tenements, hereditaments and appurtenances thereunto belonging or appertaining, rents, issued and profits thereof.

SAID SALE, will be made without covenant or warranty, expressed or implied, regarding title, possession or encumbrances to pay the unpaid balance of said note, to wit $873,927.95, with interest thereon from June 19, 2009, as in said note provided, advances, if any, and costs of the trustee under the terms of said Deed of Trust will be additional.

This property is sold "as-is", lender is unable to validate the condition, defects or disclosure issues of said property and any buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing a receipt.

Dated: January 25, 2010

Stewart Title of Nevada Holdings, Inc., as Trustee

By: _____
Suzanne Haskins
Assistant Secretary

KAROL KELLEY
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 03-81062-2 - Expires February 14, 2011

---

State of Nevada        }
                       } ss.
County of Washoe       }

This instrument was acknowledged before    January 25, 2010
me on
by:    Suzanne Haskins, Assistant Secretary

WITNESS my hand and official seal.

Signature: _____
Notary Public

Do Not Publish Below This Line

---

Land situated in the Reno Judicial Township
Publish Notice of Sale in the Reno Gazette Journal.
Three times on January 28, 2010, February 4, 2010 and February 11, 2010

**Exhibit A**
**LEGAL DESCRIPTION**

File Number: 1022871-02

All that certain land situated in the County of Washoe, State of Nevada, described as follows:

Commencing at the West quarter corner of Section 15, Township 20 North, Range 19 Ease, M.D.B.&M., thence North 0°53' West along the Western line of said Section 15, a distance of 223.00 feet to the Southern line of U.S. Highway No. 395, (100 feet wide); thence South 62°00' East along the last mentioned line 400 feet to the true point of beginning; thence South 62°00' East along said Southern line of U.S. Highway No. 395, a distance of 243.00 feet; thence South 28°00' West 484.12 feet; thence South 29°11' West 279.88 feet to the Northern right of way line of the Western Pacific Railroad Co.; thence North 76°08' West along the last mentioned line 192.53 feet to the Western line of said Section 15; thence North 1°08' West along the last mentioned line 103.68 feet to a line drawn South 28°00' West from the true point of beginning; thence North 28°00' East 720.40 feet to the true point of beginning. Situate in the Northwest 1/4 of Southwest1/4 and Southwest 1/4 of Northwest 1/4 of said Section 15.

The above legal description was taken from prior Document No. 3067036



# EXHIBIT 2

# EXHIBIT 2

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 03-31-2009 | 05-19-2009 | 8036932518-01 | 01A1 / MW1 | 2237368 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE LLC
1796 Prospector Ave.
Park City, UT 84060

**Lender:** Colonial Bank
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

**This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change In Terms Agreement, dated March 31, 2009, and executed in connection with a loan or other financial accommodations between COLONIAL BANK and BIG STUFF STORAGE LLC.**

Each party who signs, other than Colonial Bank represents and warrants to Colonial Bank that it has received, read and understood this Change in Terms Agreement.

**GUARANTORS:**

____________________
**MARK D. HUBER**

____________________
**GISELLE HUBER**

____________________
**ALAN J. HUBER**

____________________
**ELIZABETH HUBER**

**THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON MARCH 31, 2009.**

**BORROWER:**

**BIG STUFF STORAGE LLC**

By: ____________________
**MARK D. HUBER, Manager/Member of BIG STUFF STORAGE LLC**

By: ____________________
**ALAN J. HUBER, Manager/Member of BIG STUFF STORAGE LLC**

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 03-31-2009 | 05-15-2009 | 8036932516-01 | 07A / AW | 2237366 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  BIG STUFF STORAGE LLC
1796 Prospector Ave.
Park City, UT 84060

**Lender:**  Colonial Bank
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

---

This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change in Terms Agreement, dated March 31, 2009, and executed in connection with a loan or other financial accommodations between COLONIAL BANK and BIG STUFF STORAGE LLC.

Each party who signs, other than Colonial Bank represents and warrants to Colonial Bank that it has received, read and understood this Change in Terms Agreement.

**GUARANTORS:**

MARK D. HUBER

GISELLE HUBER

ALAN J. HUBER

ELIZABETH HUBER

THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON MARCH 31, 2009.

**BORROWER:**

BIG STUFF STORAGE LLC

By: _____
MARK D.  HUBER, Manager/Member of BIG STUFF
STORAGE LLC

By: _____
ALAN J. HUBER, Manager/Member of BIG STUFF
STORAGE LLC

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 12-18-2008 | 02-19-2009 | 8036932518-01 | 01A1 / MW1 | 2237368 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE, LLC
1796 Prospector Ave.
Park City, UT 84060

**Lender:** Colonial Bank
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

**This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change In Terms Agreement, dated December 18, 2008, and executed in connection with a loan or other financial accommodations between COLONIAL BANK and BIG STUFF STORAGE, LLC.**

Each party who signs, other than Colonial Bank represents and warrants to Colonial Bank that it has received, read and understood this Change in Terms Agreement.

**GUARANTORS:**

**MARK D. HUBER**

**GISELLE HUBER**

**ALAN J. HUBER**

**ELIZABETH HUBER.**

**THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON DECEMBER 18, 2008.**

**BORROWER:**

**BIG STUFF STORAGE, LLC**

By: ______________________
**MARK D. HUBER, Manager/Member of BIG STUFF STORAGE, LLC**

By: ______________________
**ALAN J. HUBER, Manager/Member of BIG STUFF STORAGE, LLC**

LASER PRO Lending, Ver. 5.42.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - NV X:\NEVADA\CFI\LPL\D20C.FC TR-3326 PR-3

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 06-30-2008 | 06-19-2008 | 8036932518 | 91E2 / MW1 | 2237368 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE, LLC
1796 Prospector Ave.
Park City, UT 84060

**Lender:** Colonial Bank
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change In Terms Agreement, dated June 30, 2008, and executed in connection with a loan or other financial accommodations between COLONIAL BANK and BIG STUFF STORAGE, LLC.

Each party who signs, other than Colonial Bank represents and warrants to Colonial Bank that it has received, read and understood this Change in Terms Agreement.

GUARANTORS:

MARK D. HUBER

GISELLE HUBER

ALAN J. HUBER

ELIZABETH HUBER

THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON JUNE 30, 2008.

BORROWER:

BIG STUFF STORAGE, LLC

By: ______________________
MARK D. HUBER, Manager/Member of BIG STUFF STORAGE, LLC

By: ______________________
ALAN J. HUBER, Manager/Member of BIG STUFF STORAGE, LLC

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 03-19-2008 | 05-19-2008 | 8036932518-01 | 01A1 / MW1 | 2237368 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE, LLC
1796 Prospector Ave.
Park City, UT 84060

**Lender:** COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

**This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change In Terms Agreement, dated March 19, 2008, and executed in connection with a loan or other financial accommodations between COLONIAL BANK, N.A. and BIG STUFF STORAGE, LLC.**

Each party who signs, other than Colonial Bank, N.A., represents and warrants to Colonial Bank, N.A. that it has received, read and understood this Change in Terms Agreement.

**GUARANTORS:**

**MARK D. HUBER**

**GISELLE HUBER**

**ALAN J. HUBER**

**ELIZABETH HUBER.**

**THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON MARCH 19, 2008.**

**BORROWER:**

**BIG STUFF STORAGE, LLC**

By: __________
**MARK D. HUBER, Manager/Member of BIG STUFF STORAGE, LLC**

By: __________
**ALAN J. HUBER, Manager/Member of BIG STUFF STORAGE, LLC**

LASER PRO Lending, Ver. 5.38.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - NV D:\NEVADA\CFI\LPL\D20C.FC TR-3156 PR-3

# GUARANTOR'S ACKNOWLEDGEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $875,000.00 | 11-19-2007 | 02-19-2008 | 8036932518-01 | 01A1 / MW1 | 2237368 | 49701 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE, LLC
P.O. Box 68120
Park City, UT 84068

**Lender:** COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

This GUARANTOR'S ACKNOWLEDGEMENT is attached to and by this reference is made a part of the Change In Terms Agreement, dated November 19, 2007, and executed in connection with a loan or other financial accommodations between COLONIAL BANK, N.A. and BIG STUFF STORAGE, LLC.

Each party who signs, other than Colonial Bank, N.A., represents and warrants to Colonial Bank, N.A. that it has received, read and understood this Change in Terms Agreement.

**GUARANTORS:**

MARK D. HUBER

GISELLE HUBER

ALAN J. HUBER

ELIZABETH HUBER.

THIS GUARANTOR'S ACKNOWLEDGEMENT IS EXECUTED ON NOVEMBER 19, 2007.

**BORROWER:**

BIG STUFF STORAGE, LLC

By: ______________________
MARK D. HUBER, Manager/Member of BIG STUFF STORAGE, LLC

By: ______________________
ALAN J. HUBER, Manager/Member of BIG STUFF STORAGE, LLC

LASER PRO Lending, Ver. 5.38.10.001 Copr. Harland Financial Solutions, Inc. 1997, 2007. All Rights Reserved. - NV D:\NEVADA\CFN\PL\D20C.FC TR-3054 PR-3

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | 01A0 / MW1 | 2237612 | 49701 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:**  BIG STUFF STORAGE, LLC
P.O. Box 68120
Park City, UT  84068

**Lender:**  COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV  89502

**Guarantor:**  MARK D. HUBER
P O Box 68120
Park City, UT  84068

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.**  For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents.  This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.  Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.**  The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender.  "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative.  This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties.  Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.**  THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS.  ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.**  This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.  If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing.  Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing.  Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation.  For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due.  This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness.  All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness.  This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death.  Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect.  Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty.  A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty.  It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty.  This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.**  Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:  (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and  (H)  to assign or transfer this Guaranty in whole or in part.

**COMMERCIAL GUARANTY**

Loan No: 8036932518-01

**(Continued)**

Page 2

---

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the

**COMMERCIAL GUARANTY**

Loan No: 8036932518-01                          **(Continued)**                                          Page 3

commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washoe County, State of Nevada. **(Initial Here** ▨▨▨▨▨ **)**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BIG STUFF STORAGE, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation MARK D. HUBER, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means COLONIAL BANK, N.A., its successors and assigns.

**Note.** The word "Note" and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 8036932518-01                                                                    Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 19, 2006.

GUARANTOR:

X_____
   MARK D. HUBER

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Utah_____                          )
                                                     ) SS
COUNTY OF _____Summit_____                           )

This instrument was acknowledged before me on ___5/22/06_____ by MARK D. HUBER.

NOTARY PUBLIC
RILEY D. RISTO
1555 Snow Creek Dr.
Park City, UT 84060
My Commission Expires
February 12, 2007
STATE OF UTAH

(Seal)

_____
(Signature of notarial officer)

Notary Public in and for State of ___Utah_____

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | 01AD / MW1 | 2237650 | 49701 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:**  BIG STUFF STORAGE, LLC
P.O. Box 68120
Park City, UT 84068

**Lender:**  COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

**Guarantor:**  GISELLE HUBER
P O Box 68120
Park City, UT 84068

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds any one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B)  to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D)  to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E)  to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G)  to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this Guaranty in whole or in part.

# COMMERCIAL GUARANTY
## (Continued)

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the

## COMMERCIAL GUARANTY
**(Continued)**

commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washoe County, State of Nevada. **(Initial Here _____ )**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BIG STUFF STORAGE, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation GISELLE HUBER, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means COLONIAL BANK, N.A., its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 8036932518-01                                                                          Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 19, 2006.

GUARANTOR:

X _____
GISELLE HUBER

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Utah_____                        )
                                               ) SS
COUNTY OF _____Summit_____                     )

This instrument was acknowledged before me on _____5/22/06_____ by GISELLE HUBER.

_____
(Signature of notarial officer)

Notary Public in and for State of _____Utah_____

NOTARY PUBLIC
RILEY D. RISTO
1555 Snow Creek Dr.
Park City, UT 84060
My Commission Expires
February 12, 2007
STATE OF UTAH

LASER PRO Lending, Ver. 5.31.00.004 Copr. Harland Financial Solutions, Inc 1997, 2006. All Rights Reserved. - NV  D:\NEVADA\CFI\LPL\E20.FC  TR-2590  PR-3

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| | | | | 01A0 / MW1 | 2237634 | 49701 | [handwritten initials] |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** BIG STUFF STORAGE, LLC
P.O. Box 68120
Park City, UT 84068

**Lender:** COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV 89502

**Guarantor:** ALAN J. HUBER
7560 Hillview Drive
Reno, NV 89506

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection apreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H) to assign or transfer this Guaranty in whole or in part.

**COMMERCIAL GUARANTY**
**(Continued)**

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 8036932518-01

Page 3

commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washoe County, State of Nevada. **(Initial Here _____ )**

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BIG STUFF STORAGE, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation ALAN J. HUBER, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means COLONIAL BANK, N.A., its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**COMMERCIAL GUARANTY**
**(Continued)**

Loan No: 8036932518-01                                                                        Page 4

---

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY". NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED MAY 19, 2006.

GUARANTOR:

X _____
**ALAN J. HUBER**

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _NEVADA_ )
                                              ) SS
COUNTY OF _WASHOE_ )

This instrument was acknowledged before me on _MAY 23, 2006_ by ALAN J. HUBER

```
SANDRA VanDOVER
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 04-90681-2 - Expires June 29, 2008
```

_____
(Signature of notarial officer)

Notary Public in and for State of _NEVADA_

(Seal, if any)

---

LASER PRO Lending, Ver 5.31.00 004 Copr. Harland Financial Solutions, Inc. 1997, 2006.  All Rights Reserved.  - NV  D:\NEVADA\CFILPLUE20.FC  TR-2580  PR-3

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| | | | | 01AO / MW1 | 2237814 | 49701 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:**  BIG STUFF STORAGE, LLC
P.O. Box 68120
Park City, UT  84068

**Lender:**  COLONIAL BANK, N.A.
Commercial Real Estate - Reno
2330 South Virginia Street
Reno, NV  89502

**Guarantor:**  ELIZABETH HUBER
7560 Hillview Drive
Reno, NV  89506

**CONTINUING GUARANTEE OF PAYMENT AND PERFORMANCE.** For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the Indebtedness or against any collateral securing the Indebtedness, this Guaranty or any other guaranty of the Indebtedness. Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents. Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

**INDEBTEDNESS.** The word "Indebtedness" as used in this Guaranty means all of the principal amount outstanding from time to time and at any one or more times, accrued unpaid interest thereon and all collection costs and legal expenses related thereto permitted by law, attorneys' fees, arising from any and all debts, liabilities and obligations of every nature or form, now existing or hereafter arising or acquired, that Borrower individually or collectively or interchangeably with others, owes or will owe Lender. "Indebtedness" includes, without limitation, loans, advances, debts, overdraft indebtedness, credit card indebtedness, lease obligations, liabilities and obligations under any interest rate protection agreements or foreign currency exchange agreements or commodity price protection agreements, other obligations, and liabilities of Borrower, and any present or future judgments against Borrower, future advances, loans or transactions that renew, extend, modify, refinance, consolidate or substitute these debts, liabilities and obligations whether: voluntarily or involuntarily incurred; due or to become due by their terms or acceleration; absolute or contingent; liquidated or unliquidated; determined or undetermined; direct or indirect; primary or secondary in nature or arising from a guaranty or surety; secured or unsecured; joint or several or joint and several; evidenced by a negotiable or non-negotiable instrument or writing; originated by Lender or another or others; barred or unenforceable against Borrower for any reason whatsoever; for any transactions that may be voidable for any reason (such as infancy, insanity, ultra vires or otherwise); and originated then reduced or extinguished and then afterwards increased or reinstated.

If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantor, Lender's rights under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. Guarantor's liability will be Guarantor's aggregate liability under the terms of this Guaranty and any such other unterminated guaranties.

**CONTINUING GUARANTY.** THIS IS A "CONTINUING GUARANTY" UNDER WHICH GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON AN OPEN AND CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE INDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THIS GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all the Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at Lender's address listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new Indebtedness created after actual receipt by Lender of Guarantor's written revocation. For this purpose and without limitation, the term "new Indebtedness" does not include the Indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all the Indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the Indebtedness. All renewals, extensions, substitutions, and modifications of the Indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new Indebtedness. This Guaranty shall bind Guarantor's estate as to the Indebtedness created both before and after Guarantor's death or incapacity, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation Lender receives from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. **It is anticipated that fluctuations may occur in the aggregate amount of the Indebtedness covered by this Guaranty, and Guarantor specifically acknowledges and agrees that reductions in the amount of the Indebtedness, even to zero dollars ($0.00), prior to Guarantor's written revocation of this Guaranty shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the Indebtedness remains unpaid and even though the Indebtedness may from time to time be zero dollars ($0.00).**

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, **without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time:** (A)  prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (B) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (C)  to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (D) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (F)  to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) to sell, transfer, assign or grant participations in all or any part of the Indebtedness; and (H)  to assign or transfer this Guaranty in whole or in part.

**COMMERCIAL GUARANTY**

**(Continued)**

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (A) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (B) this Guaranty is executed at Borrower's request and not at the request of Lender; (C) Guarantor has full power, right and authority to enter into this Guaranty; (D) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (E) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (F) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present Guarantor's financial condition as of the dates the financial information is provided; (G) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (H) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (I) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (J) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (A) to continue lending money or to extend other credit to Borrower; (B) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (E) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (F) to pursue any other remedy within Lender's power; or (G) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (B) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (C) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (D) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (E) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced, there is outstanding Indebtedness which is not barred by any applicable statute of limitations; or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of the enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness, whether now existing or hereafter created, shall be superior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender is hereby authorized, in the name of Guarantor, from time to time to file financing statements and continuation statements and to execute documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

   **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

   **Arbitration.** Borrower and Guarantor and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Guaranty or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Guaranty shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the

## COMMERCIAL GUARANTY
### (Continued)

commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may hire or pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty.

**Governing Law. This Guaranty will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Nevada without regard to its conflicts of law provisions. This Guaranty has been accepted by Lender in the State of Nevada.**

**Choice of Venue.** If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of Washoe County, State of Nevada. (Initial Here _____ )

**Integration.** Guarantor further agrees that Guarantor has read and fully understands the terms of this Guaranty; Guarantor has had the opportunity to be advised by Guarantor's attorney with respect to this Guaranty; the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty. Guarantor hereby indemnifies and holds Lender harmless from all losses, claims, damages, and costs (including Lender's attorneys' fees) suffered or incurred by Lender as a result of any breach by Guarantor of the warranties, representations and agreements of this paragraph.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, limited liability companies, or similar entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, or other agents acting or purporting to act on their behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** Any notice required to be given under this Guaranty shall be given in writing, and, except for revocation notices by Guarantor, shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Guaranty. All revocation notices by Guarantor shall be in writing and shall be effective upon delivery to Lender as provided in the section of this Guaranty entitled "DURATION OF GUARANTY." Any party may change its address for notices under this Guaranty by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address. Unless otherwise provided or required by law, if there is more than one Guarantor, any notice given by Lender to any Guarantor is deemed to be notice given to all Guarantors.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Guaranty on transfer of Guarantor's interest, this Guaranty shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Guaranty. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Guaranty shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means BIG STUFF STORAGE, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Guarantor.** The word "Guarantor" means everyone signing this Guaranty, including without limitation ELIZABETH HUBER, and in each case, any signer's successors and assigns.

**Guaranty.** The word "Guaranty" means this guaranty from Guarantor to Lender.

**Indebtedness.** The word "Indebtedness" means Borrower's indebtedness to Lender as more particularly described in this Guaranty.

**Lender.** The word "Lender" means COLONIAL BANK, N.A., its successors and assigns.

**Note.** The word "Note" means and includes without limitation all of Borrower's promissory notes and/or credit agreements evidencing Borrower's loan obligations in favor of Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for promissory notes or credit agreements.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## COMMERCIAL GUARANTY
### (Continued)

Loan No: 8036932518-01                                                          Page 4

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS.  IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY".  NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.  THIS GUARANTY IS DATED MAY 19, 2006.

GUARANTOR:

X _____
ELIZABETH HUBER

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _NEVADA_ )
                  ) SS
COUNTY OF _WASHOE_ )

This instrument was acknowledged before me on _MAY 23, 2006_ by ELIZABETH HUBER.

_____
(Signature of notarial officer)

Notary Public in and for State of _NEVADA_

SANDRA VanDOVER
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 04-90681-2 - Expires June 29, 2008

(Seal, if any)

# EXHIBIT 3

# EXHIBIT 3

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

March 18, 2011

Alan R. Smith, Esq.                               Via first-class mail & email,
505 Ridge Street                                  ars@asmithlaw.com
Reno, Nevada 89501


Big Stuff Storage, LLC                            Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105


      Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
              Our Matter No. 30794-1


Dear Alan and Big Stuff Storage, LLC:

      I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to Section 4.1(E) of debtor's plan of reorganization, BB&T is providing you with notice of default based on Big Stuff Storage LLC's failure to make payments of property taxes due on January 3, 2011, and March 7, 2011. I believe you also have been notified of the same by Dennis Harms from BB&T. BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required.

      Please direct any questions to me at the address on this letter, at lbubala@armstrongteasdale.com, or at 775-784-3212. Thank you.


              Sincerely,

              Louis M. Bubala III


LMB/bjs

# EXHIBIT 4

# EXHIBIT 4

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

July 20, 2011

Alan R. Smith, Esq.                         Via first-class mail & email,
505 Ridge Street                            ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                      Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

Re:     In re Big Stuff Storage, LLC (Bankr. D. Nev.)
        Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to Section 4.1(E) of debtor's plan of reorganization, BB&T is providing you with notice of default based on Big Stuff Storage LLC's failure to make payments of property taxes (and associated penalties and interest) in the amount of $5,758.46 as of July 19, 2011. BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:     Dennis Harms, BB&T, email only
        Sandy Van Dover, BB&T, email only
LMB/bjs

# EXHIBIT 5

# EXHIBIT 5

DOC #4030527
08/11/2011 02:33:01 PM
Electronic Recording Requested By
STEWART TITLE OF NEVADA RENO
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee: $215.00 RPTT: $0
Page 1 of 2

A.P.N. #       082-290-19
Escrow No.   1022871-02

**Recording Requested By:**

# stewart
title of nevada

**When Recorded Mail To:**
Stewart Title of Nevada Holdings Inc.
5335 Kietzke Lane, Ste 110
Reno, NV  89511

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PROPERTY ADDRESS: 7875 North Virginia Street, Reno, Nevada**
**Loan # 8036932518-01**

NOTICE IS HEREBY GIVEN: That Stewart Title of Nevada Holdings Inc., a Nevada corporation was the duly appointed Substitute Trustee under a Construction Deed of Trust dated May 19, 2006, executed by Big Stuff Storage, LLC, a Nevada limited liability company as Trustor(s) to Colonial Bank, N.A., as Beneficiary  and recorded as Instrument No. 3392909, on May 26, 2006, of Official Records in the office of the County Recorder of Washoe County, State of Nevada securing, among other obligations, one note(s) for the original principal sum of $875,000.00, as modified from time to time.  That the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

> The balance of the 2010-2011 Washoe County Property taxes in the amount of $5,801.09 said default is pursuant to that Order Confirming Debtor's Plan of Reorganization Case No. BK-N-10-50471-GWZ dated December 29, 2010 recorded in the Official Records of the Washoe County Recorder on April 22, 2011 as Instrument No. 3996013.
> TOGETHER with any attorney fees, advances, ensuing charges, interest, insurance monthly installments, late penalties and taxes which may become due during the term of this default.

That by reason thereof, the undersigned, present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

YOU MAY HAVE THE RIGHT TO CURE THE DEFAULT HEREIN AND REINSTATE THE OBLIGATION SECURED BY SUCH DEED OF TRUST ABOVE DESCRIBED. SECTION 107.080 OF NRS PREMITS CERTAIN DEFAULTS TO BE CURED UPON THE PAYMENT OF THE AMOUNTS REQUIRED BY THAT SECTION WITHOUT REQUIRING PAYMENT OF THAT PORTION OF PRINCIPAL AND INTEREST WHICH WOULD NOT BE DUE HAD NO DEFAULT OCCURRED. WHERE REINSTATMENT IS POSSIBLE, IF THE DEFAULT IS NOT CURED WITHIN 35 DAYS FOLLOWING THE RECORDING AND MAILING TO TRUSTOR OR TRUSTOR'S SUCCESSOR IN INTEREST OF THIS NOTICE, THE RIGHT OF REINSTATEMENT WILL TERMINATE AND THE PROPERTY MAY THEREAFTER BE SOLD.

To determine if reinstatement is possible and the amount, if any, necessary to cure the default, contact the Beneficiary or their successors in interest, whose name and address as of the date of this notice is:

*Branch Banking and Trust Company, Attn:  Dennis Harms, 5455 Kietzke Lane, Ste. B, Reno, Nevada 89511.  Telephone Number 775-851-1050.*

Dated: _8/10/2011_

Branch Banking and Trust Company

By: _____
   Dennis Harms
   Sr. Vice President

State of Nevada   }
                  } ss.
County of Washoe  }

This instrument was acknowledged before me on _8/10/2011_
By:  Dennis Harms, Sr. Vice President of Branch Banking and Trust Company

Signature: _____
          Notary Public

BRANDIE M. MARTIN
Notary Public State of Nevada
No. 05-100496-2
My Appt. Exp. Dec. 16, 2013

# EXHIBIT 6

# EXHIBIT 6



**Washoe County Treasurer**
**Tammi Davis**

Washoe County Treasurer
P.O. Box 30039, Reno, NV 89520-3039
ph: (775) 328-2510 fax: (775) 328-2500

TREASURER HOME PAGE      WASHOE COUNTY HOME PAGE

---

Tax Search          Payment Cart

---

### Welcome to the Washoe County Treasurer's property tax search page.

To obtain property tax information, please enter the parcel number (for real property) or the identifier number (for personal property) in the box below. If you have any questions, or if your search does not display any results, please contact us at (775) 328-2510 or tax@washoecounty.us

- **ALERTS:** If your real property taxes are delinquent, the search results displayed may not reflect the correct amount owing. Please contact our office for the current amount due.

- For your convenience, online payment is available on this site. E-check payments are accepted without a fee. However, a convenience fee does apply for online credit card payments. See Payment Information for details.

- **Please Note: Your search is limited to 200 parcels only.**

 Back to Search List     Print Tax Record

**Tax Summary**                                    Last Update: 12/31/2011 2:18:15 AM

| PIN Number: 08229019  Tax Roll : 50 General industrial: light indust, trucking, warehs |

| **Current Owner** | **SITUS** |
|---|---|
| BIG STUFF STORAGE LLC | 7875 N VIRGINIA ST |
| 1570 BLAINE AVE | |
| SALT LAKE CITY UT 84105 | **Deed Number** |
| **GEO** | 5610873 |

**TAG**
1040

| Tax Bill Totals | |
|---|---|
| Current Tax | $2,568.33 |
| Delinquent | $0.00 |
| Amount Due | **$2,568.33** |

| Current Tax | Delinquents | Payment History | Tax Detail | | |
|---|---|---|---|---|---|
| Last Paid | Bill Number | Tax Year | Amount Paid | Receipt Number | |
| 12/12/2011 | 440754 | 2011 | $8,069.31 | U11.21269 | |
| 09/20/2011 | 736544 | 2010 | $1,843.73 | U11.12153 | |
| 09/02/2011 | 736544 | 2010 | $4,000.00 | U11.11114 | |
| 10/04/2010 | 736544 | 2010 | $2,676.54 | B10.232380 | |
| 10/04/2010 | 736544 | 2010 | $2,558.02 | B10.232381 | |
| 04/27/2010 | 499744 | 2009 | $499.46 | U09.41763 | |
| 12/22/2009 | 499744 | 2009 | $10,489.44 | U09.27451 | |
| 12/22/2009 | 257440 | 2008 | $14,692.32 | U09.27451 | |
| 12/22/2009 | 133708 | 2007 | $2,879.92 | U09.27451 | |
| 12/08/2008 | 133708 | 2007 | $3,000.00 | U08.1029908 | |
| 09/18/2007 | 133708 | 2007 | $1,621.82 | 1766866 | |

* Payment amounts may include any applicable penalties and interest






CHANGE OF ADDRESS

All requests for a mailing address change must be submitted in writing, including a signature (unless using the online form).

Please mail your request to: Washoe County Treasurer
P O Box 30039
Reno, NV  89520-3039

Or fax your request to:
(775) 328-2500

Or click here to submit online form - no signature required.

**PAY ON-LINE**

Payments will be applied to the oldest charge first.

Select a payment option:
○ Full     $2,568.33
○ Partial

[ ADD TO CART ]

PAY BY CHECK

Please make checks payable to:
**WASHOE COUNTY TREASURER**

**Mailing Address:**
P.O. Box 30039
Reno, NV 89520-3039

**Overnight Address:**
1001 E. Ninth St., Ste D140
Reno, NV 89512-2845

The Washoe County Treasurer's Office makes every effort to produce and publish the most current and accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use, or its interpretation. If you have any questions, please contact us at (775) 328-2510 or tax@washoecounty.us

# EXHIBIT 7

# EXHIBIT 7

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

September 27, 2011

Alan R. Smith, Esq.                                    Via first-class mail & email,
505 Ridge Street                                       ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                                 Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
       Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

I write as counsel to Branch Banking and Trust Company ("BB&T"). A notice of default was recorded on August 11, 2011, and served by mail on August 16, 2011. Big Stuff Storage, LLC, has not cured the default. As a result, BB&T intends to proceed with its rights under state law, including a sale, absent a payoff of all debt. I do not believe my letter is necessary as a matter of law, and it should not be relied upon for any modification of the rights of Big Stuff Storage, LLC. I am providing the letter as a mere courtesy.

I am advised by the Washoe County Treasurer's Office that Big Stuff Storage, LLC, made payments on its delinquent 2010 property taxes in the amount of $4,000 on September 2, 2011, and $1,843.73 on September 21, 2011. As provided by NRS 107.080(2)(a)(2), (3), a borrower has 35 days to cure the default commencing on the first day following the recording and mailing of the notice of default. The 35th day after the mailing was September 20, 2011. Therefore, the default was not timely cured.

NRS 107.080(3)(a) also states that a cure requires payment of the costs associated with recording the notice of default and the costs in making good on the deficiency. The notice of default specifically provided the name, physical address and telephone number of BB&T's contact to determine the amount necessary for reinstatement. Cf. NRS 107.080(3)(b), 107.087. No such inquiry was made by Big Stuff Storage, LLC, and no such payments have been made to date. Because these costs were not paid, the default was not cured and BB&T is entitled to proceed with its state law rights. See, e.g., Volcano Developers, LLC v. Bonneville Mort. Co., Case No. 2:11-cv-00504-GMN-PAL (D. Nev. Aug. 1, 2011).

Alan R. Smith and Big Stuff Storage, LLC
September 27, 2011
Page 2

Additionally, the loan remains in default for failure to pay the property taxes due on August 15, 2011. You were specifically advised of this default in a letter sent on August 16, 2011. As the recorded notice stated, Big Stuff Storage, LLC, was obligated to pay any taxes becoming due during the terms of the default. The Washoe County Treasurer's Office advises me today that the current delinquency, including penalties and interest, is $2,675.59.

If you believe I am mistaken on any of these points, please contact me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:    Dennis Harms & Sandy Van Dover, BB&T, email only
       Michelle Kazmar, counsel for Z Loan, email only

ARMSTRONG TEASDALE LLP

# EXHIBIT 8

# EXHIBIT 8

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

August 16, 2011

Alan R. Smith, Esq.                                 Via first-class mail & email,
505 Ridge Street                                    ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                              Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

      Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
             Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

     I am writing as counsel to Branch Banking and Trust Company ("BB&T").  Pursuant to Section 4.1(E) of debtor's plan of reorganization, BB&T is providing you with notice of default based on Big Stuff Storage LLC's failure to make payments of property taxes in the amount of $2,572.68 due on August 15, 2011.  BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required.  Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212.  Thank you.

                    Sincerely,

                    Louis M. Bubala III

cc:    Dennis Harms, BB&T, email only
       Sandy Van Dover, BB&T, email only
LMB/bjs

# EXHIBIT 9

# EXHIBIT 9

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

November 7, 2011

Alan R. Smith, Esq.                              Via first-class mail & email,
505 Ridge Street                                 ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                           Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

      Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
             Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

      I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to debtor's plan of reorganization, BB&T is providing you with notice of default based on Big Stuff Storage LLC's failure to make the first and second quarterly property taxes for 2011-12. BB&T previously provided you with notice of your failure to make the first quarterly property tax payment for 2011-12, with a letter dated August 16, 2011. BB&T is advancing the funds to bring the property taxes current. If you seek to cure the default, you must contact me to determine the exact amount necessary to cure the default.

      BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. This notice does not waive or alter any other rights that BB&T has and/or is already pursuing. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:   Dennis Harms, BB&T, email only
       Sandy Van Dover, BB&T, email only
LMB/bjs

# EXHIBIT 10

# EXHIBIT 10

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

October 20, 2011

Alan R. Smith, Esq.                                    Via first-class mail & email,
505 Ridge Street                                       ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                                 Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

      Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
              Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

     I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to debtor's plan of reorganization, BB&T is providing you with notice of default based on Big Stuff Storage LLC's failure to make payments of on the loan for October 2011. BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. This notice does not waive or alter any other rights that BB&T has and/or is already pursuing. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

                    Sincerely,

                    Louis M. Bubala III

cc:    Dennis Harms, BB&T, email only
       Sandy Van Dover, BB&T, email only
LMB/bjs

# EXHIBIT 11

# EXHIBIT 11

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

December 1, 2011

Alan R. Smith, Esq.                          Via first-class mail & email,
505 Ridge Street                             ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                       Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
       Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to debtor's plan of reorganization, BB&T is providing you with notice of default for failure to make the loan payment due on November 15, 2011. I am advised that Alan Huber attempted to make a payment in person last week but was told that BB&T would not accept it. I also understand that BB&T has since left message for Mr. Huber that it will accept the monthly loan payment, but without response from Mr. Huber. I spoke with John Gezelin in Mr. Smith's office about this loan when I saw him in court on November 29, 2011, and advised him that the bank will accept the loan payment.

BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. This notice does not waive or alter any other rights that BB&T has and/or is already pursuing. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:    Dennis Harms, BB&T, email only
       Sandy Van Dover, BB&T, email only
LMB/bjs

# EXHIBIT 12

# EXHIBIT 12

Louis M. Bubala III

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

December 22, 2011

Alan R. Smith, Esq.                          Via first-class mail & email,
505 Ridge Street                             ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                       Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
       Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to debtor's plan of reorganization, BB&T is providing you with notice of default for failure to make the loan payment due on December 15, 2011. BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. This notice does not waive or alter any other rights that BB&T has and/or is already pursuing. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:    Dennis Harms, BB&T, email only
LMB/bjs

# EXHIBIT 13

# EXHIBIT 13

**Louis M. Bubala III**

Direct T 775.784.3212

lbubala@armstrongteasdale.com

MISSOURI KANSAS ILLINOIS NEVADA SHANGHAI

November 7, 2011

Alan R. Smith, Esq.                     Via first-class mail & email,
505 Ridge Street                        ars@asmithlaw.com
Reno, Nevada 89501

Big Stuff Storage, LLC                  Via first-class mail
1570 Blaine Avenue
Salt Lake City, UT 84105

Re:    In re Big Stuff Storage, LLC (Bankr. D. Nev.)
       Our Matter No. 30794-1

Dear Alan and Big Stuff Storage, LLC:

I am writing as counsel to Branch Banking and Trust Company ("BB&T"). Pursuant to debtor's plan of reorganization, BB&T is providing you with notice of default based the bankruptcy filing by two guarantors, Mark and Giselle Huber. *In re Huber*, Case No. 11-34444 (Bankr. D. Utah filed October 4, 2011).

BB&T may exercise its rights under the plan and/or state law, as appropriate, in the event that this matter is not remedied as required. This notice does not waive or alter any other rights that BB&T has and/or is already pursuing. Please direct any questions to me at the address on this letter, at lbubala@ armstrongteasdale.com, or at 775-784-3212. Thank you.

Sincerely,

Louis M. Bubala III

cc:    Dennis Harms, BB&T, email only
       Sandy Van Dover, BB&T, email only
LMB/bjs

ARMSTRONG TEASDALE LLP    |    50 WEST LIBERTY, SUITE 950, RENO, NV 89501  T 775.322.7400  F 775.322.9049    ArmstrongTeasdale.com

# EXHIBIT 14

# EXHIBIT 14

DOC #4069261
12/22/2011 08:12:23 AM
Electronic Recording Requested By
STEWART TITLE OF NEVADA RENO
Washoe County Recorder
Kathryn L. Burke – Recorder
Fee: $15.00  RPTT: $0
Page 1 of 2

| A.P.N. # | 082-290-19 |
|----------|------------|
| Escrow No. | 1022871-02 |

**Recording Requested By:**

# stewart
→ title of nevada

**When Recorded Mail To:**

Stewart Title of Nevada Holdings Inc.
5335 Kietzke Lane, Ste 110

Reno, NV 89511

## RESCISSION OF NOTICE OF DEFAULT

WHEREAS, in the matter of the Deed of Trust dated May 19, 2006, executed by Big Stuff Storage, LLC, a Nevada limited liability company as Trustor(s) to First Centennial Title Co. of Nevada, as Trustee and recorded as Instrument No. 3392909, on May 26, 2006, of Official Records in the office of the County Recorder of Washoe County, State of Nevada, the undersigned Trustee did cause a Notice of Default and Election to Sell under said Deed of Trust to be recorded August 11, 2011, of Official Records, Washoe County, Nevada on, as Instrument No. 4030527, to which record reference is hereby made for full particulars; and

WHEREAS, the undersigned Stewart Title of Nevada Holdings, Inc., a Nevada corporation, Trustee under said Deed of Trust, as order directing said Trustee to discontinue said Sale proceedings and now desires to rescind said notice so recorded as aforesaid;

NOW THEREFORE, NOTICE IS HEREBY GIVEN that the undersigned does hereby rescind, cancel and withdraw said Notice of Default; it being understood, however, that this Rescission shall not in any manner be construed as waiving or affecting any breach or default, past, present or future, under said Deed of Trust, or as impairing any right of remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Notice, and shall in nowise jeopardize and/or impair any right, remedy or privilege secured to the Beneficiary and/or Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, or obligations thereof.

Dated:  *December 31, 2011*

Stewart Title of Nevada Holdings, Inc.

By: _Suzanne Haskins_

Suzanne Haskins
Assistant Secretary

State of Nevada         }
                        } ss.
County of Washoe        }

This instrument was acknowledged before me on     December 21, 2011
By:  Suzanne Haskins, Assistant Secretary of Stewart Title of Nevada
Holdings

Signature: _Brandie Martin_

Notary Public

BRANDIE M. MARTIN
Notary Public State of Nevada
No. 05-100496-2
My Appt. Exp. Dec. 16, 2013

(One inch Margin on all sides of Document for Recorder's Use Only        Page 2 of 2

DOC #4069262
12/22/2011 08:12:23 AM
Electronic Recording Requested By
STEWART TITLE OF NEVADA RENO
Washoe County Recorder
Kathryn L. Burke – Recorder
Fee: $219.00 RPTT: $0
Page 1 of 6

| A.P.N. # | 082-290-19 |
| Escrow No. | 1022871-02 |

**Recording Requested By:**

# stewart
title of nevada

**When Recorded Mail To:**
Stewart Title of Nevada Holdings Inc.
5335 Kietzke Lane, Ste 110
Reno, NV 89511

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

PROPERTY ADDRESS: 7875 N. Virginia Street, Reno, Nevada 89506
Loan # 8036932518-01

NOTICE IS HEREBY GIVEN: That Stewart Title of Nevada Holdings Inc., a Nevada corporation was the duly appointed Substitute Trustee under a Deed of Trust dated May 19, 2006, executed by Big Stuff Storage, LLC, a Nevada limited liability company as Trustor(s) to Colonia Bank, N.A., as Beneficiary and recorded as Instrument No. 3392909, on May 26, 2006 , of Official Records in the office of the County Recorder of Washoe County, State of Nevada securing, among other obligations, one note(s) for the original principal sum of $875,000.00. That the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

The monthly installment of principal and interest in the amount of $5428.49 due on November 15, 2011 and each subsequent month, Together with the 1st and 2nd quarters of the 2011-2012 Washoe County Property taxes in the amount of $5141.02 plus penalties of $359.96, said default is pursuant to that Order Confirming Debtor's Plan of Reorganization Case No. BK-N-10-50471-GWZ dated December 29, 2011. An advance for the 3rd quarter taxes in the amount of 2568.33 was made on December 12, 2011.

Together with a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that guarantors, Mark Huber and Giselle Huber have filed for bankruptcy in U.S. Bankruptcy Court, Utah Division Case 11-34444.

TOGETHER with any attorney fees, advances, ensuing charges, interest, insurance, monthly installments, late penalties and taxes which may become due during the term of this default.

That by reason thereof, the undersigned, present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does

(One inch Margin on all sides of Document for Recorder's Use Only          Page 1 of 2

hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

## NOTICE

YOU MAY HAVE THE RIGHT TO CURE THE DEFAULT HEREIN AND REINSTATE THE OBLIGATION SECURED BY SUCH DEED OF TRUST ABOVE DESCRIBED. SECTION 107.080 OF NRS PREMITS CERTAIN DEFAULTS TO BE CURED UPON THE PAYMENT OF THE AMOUNTS REQUIRED BY THAT SECTION WITHOUT REQUIRING PAYMENT OF THAT PORTION OF PRINCIPAL AND INTEREST WHICH WOULD NOT BE DUE HAD NO DEFAULT OCCURRED. WHERE REINSTATMENT IS POSSIBLE, IF THE DEFAULT IS NOT CURED WITHIN 35 DAYS FOLLOWING THE RECORDING AND MAILING TO TRUSTOR OR TRUSTOR'S SUCCESSOR IN INTEREST OF THIS NOTICE, THE RIGHT OF REINSTATEMENT WILL TERMINATE AND THE PROPERTY MAY THEREAFTER BE SOLD.

To determine if reinstatement is possible and the amount, if any, necessary to cure the default, contact the Beneficiary or their successors in interest, whose name and address as of the date of this notice is:

*Branch Banking & Trust Company, Attn: Dennis Harms, 5455 Kietzke Lane, Ste. B, Reno, Nevada 89511. Telephone: 775-851-1050.*

Dated: *12-21-11*

Branch Banking and Trust Company

By: _____
   Dennis Harms
   Sr. Vice President

---

| State of Nevada | } |
| County of Washoe | } ss. |
| | } |

This instrument was acknowledged before me on _12-21-11_
By: Dennis Harms, Sr. Vice President of Branch Banking and Trust Company

Signature: *Sandra Van Dover*
   Notary Public

SANDRA VAN DOVER
Notary Public, State of Nevada
Appointment No. 04-90681-2
My Appt. Expires Jun 29, 2012

(One inch Margin on all sides of Document for Recorder's Use Only)          Page 2 of 2

**Exhibit**
**NRS 107.080 Compliance Affidavit**
**Version 10/01/11 (issued 9/26/11)**

# AFFIDAVIT OF AUTHORITY TO EXERCISE THE POWER OF SALE

Property Owners:
Big Stuff Storage, LLC

Trustee Address:
5335 Kietzke Lane, Ste. 110
Reno, Nevada 89511

Property Address:
7875 N. Virginia Street
Reno, Nevada 89506

Deed of Trust Document Instrument
Number
3392909

STATE OF Nevada           )
                          ) ss:
COUNTY OF Washoe          )

The affiant, Dennis Harms, being first duly sworn upon oath, based on personal knowledge, and under penalty of perjury attests that I am the beneficiary or trustee, or the authorized representative of the beneficiary or trustee, of the deed of trust described in the notice of default and election to sell to which this affidavit is attached ("Deed of Trust").

I further attest, based on personal knowledge, and under penalty of perjury, to the following information, as required by NRS 107.080(2) (c):

1. The full name and business address of the trustee or the trustee's representative or assignee is:

Stewart Title of Nevada Holdings Inc.    5335 Kietzke Lane, Ste.110, Reno, NV 89511
Full Name                                Street, City, County, State, Zip

1

The full name and business address of the current holder of the note secured by the Deed of Trust is:

Branch Banking & Trust Company,
A North Carolina banking corporation          5455 Kietzke Lane, Ste. B, Reno, NV  89511
Full Name                                     Street, City, County, State, Zip

The full name and business address of the current beneficiary of record of the Deed of Trust is:

Branch Banking & Trust Company,
A North Carolina banking corporation          5455 Kietzke Lane, Ste. B, Reno, NV  89511
Full Name                                     Street, City, County, State, Zip

The full name and business address of the servicers of the obligation or debt secured by the Deed of Trust is:

Branch Banking & Trust Company,
A North Carolina banking corporation          5455 Kietzke Lane, Ste. B, Reno, NV  89511
Full Name                                     Street, City, County, State, Zip

2.   The full name and last known business address of the current and every prior known beneficiary of the Deed of Trust, is:

Branch Banking & Trust Company,
A North Carolina banking corporation          5455 Kietzke Lane, Ste. B, Reno, NV  89511

Full Name                                     Street, City, County, State, Zip

**(List additional known beneficiaries in the same format)**



2

3. The beneficiary, successor in interest of the beneficiary, or trustee of the Deed of Trust, has actual or constructive possession of the note secured by the Deed of Trust.

4. The trustee has the authority to exercise the power of sale under Chapter 107 of NRS with respect to the property encumbered by the Deed of Trust, pursuant to the instruction of the beneficiary of record and the current holder of the note secured by the Deed of Trust.

5. The following is information regarding the amount in default, the principal amount secured by the Deed of Trust, a good faith estimate of fees imposed and to be imposed because of the default and the costs and fees charged to the debtor in connection with the exercise of the power of sale:

   a. The amount of missed payments and interest in default is November principal and interest payment in the amount of $5428.49, 1st quarter tax payment of $2572.68 plus penalties of $231.54 and the 2nd quarter tax payment of $2568.31 plus penalties of $128.42.
   b. The amount of fees charged to the debtor in connection with the exercise of power of sale is $4570.78
   c. The principal amount secured by the Deed of Trust is $956,198.80.
   d. A good faith estimate of all fees imposed and to be imposed because of the default is $5320.48
   e. A good faith estimate of the total costs and fees to be charged to the debtor in connection with the exercise of the power of sale is $5120.48.

6. The following is information regarding the instrument(s) that conveyed the interest of each beneficiary:

| 11-3-2009 | 3817688 | Assignment of Security Instruments and Other Loan Documents |
|---|---|---|
| Date | Document Instrument Number | Name of Document Conveying Interest of Beneficiary |

(List information regarding prior instruments in the same format)

3

7. Following is the true and correct signature of the affiant:

Dated this 21ST day of DECEMBER , 2011 .

Affiant Name: Branch Banking & Trust Company

Signed By: _____

Print Name: Dennis Harms

STATE OF NEVADA
                          ) ss:
COUNTY OF WASHOE

On this 21ST day of DECEMBER , 2011 , personally appeared before me, a Notary Public, in and for said County and State, Dennis Harms , known to me to be the persons described in and who executed the foregoing instrument in the capacity set forth therein, who acknowledged to me that he/she executed the same freely and voluntarily and for the uses and purposes therein mentioned.

_____
NOTARY PUBLIC IN AND FOR
SAID COUNTY AND STATE

SANDRA VAN DOVER
Notary Public, State of Nevada
Appointment No. 04-90681-2
My Appt. Expires Jun 29, 2012

4