LOUIS M. BUBALA III, ESQ.
Nevada Bar #8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone: 775.322.7400
Facsimile: 775.322.9049
Email: lbubala@armstrongteasdale.com

Attorneys for Branch Banking and Trust Company

ELECTRONICALLY FILED ON
May 31, 2012

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re

BIG STUFF STORAGE LLC,

    Debtor.

Case No.: BK-N-10-50471-GWZ
Chapter: 11

**RESPONSE TO TRUSTEE'S MOTION TO ABANDON REAL PROPERTY, WITH CERTIFICATE OF SERVICE**

Hearing Date: 6/5/12
Hearing Time: 2:00 p.m.

    Branch Banking & Trust Co. ("BB&T") supports the Trustee's motion (Ct. Dkt. #143). Based on the Trustee's previously expressed intent to abandon the property at the end of the month, BB&T prepared and filed an action for judicial foreclosure. *Branch Banking & Trust Co. v. Big Stuff Storage, LLC*, Case No. 3:12-cv-00279-LRH-VPC (D. Nev.). Judge Hicks entered an order appointing a receiver effective June 1, 2012. **Exhibit 1**, Order, Ct. Dkt. #9 filed May 25, 2012. Cheryl Evans of Coldwell Banker Commercial Premier Brokers will be serving as the receiver to manage the property. Bond will be posted later today by BB&T and the receiver in compliance with Judge Hicks' order.

Dated this 31st day of May, 2012

ARMSTRONG TEASDALE LLP

By: /s/Louis M. Bubala III

LOUIS M. BUBALA III, ESQ.

Counsel to BB&T

# CERTIFICATE OF SERVICE

1. On May 31, 2012, I served the following document(s):

**RESPONSE TO TRUSTEE'S MOTION TO ABANDON REAL PROPERTY, WITH CERTIFICATE OF SERVICE**

2. I served the above-named document(s) by the following means to the persons as listed below:
   - ■ a. ECF System (attach the "Notice of Electronic Filing" or list all persons and addresses):

SALLIE B ARMSTRONG on behalf of Creditor Z SERVICING, INC.
sarmstrong@downeybrand.com, reno@downeybrand.com

CHRISTINA W. LOVATO
trusteelovato@att.net, NV26@ecfcbis.com

ALAN R SMITH on behalf of Debtor BIG STUFF STORAGE, LLC
mail@asmithlaw.com

U.S. TRUSTEE - RN - 7
USTPRegion17.RE.ECF@usdoj.gov

   - □ b. United States mail, postage fully prepaid (list persons and addresses):

   - □ c. Personal Service (list persons and addresses)
     I personally delivered the document(s) to the persons at these addresses:

   - □ d. By direct email (as opposed to through the ECF System) (list persons and email addresses):

   - □ e. By fax transmission (list persons and fax numbers):

   - □ f. By messenger:

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 31st day of May, 2012.

 Louis Bubala                                    /s/ Louis Bubala
Name                                             Signature

# EXHIBIT 1

# EXHIBIT 1

LOUIS M. BUBALA III, ESQ.
State Bar No.: 8974
ARMSTRONG TEASDALE LLP
50 W. Liberty St., Ste. 950
Reno, NV 89501
Telephone: 775.322.7400
Fax: 775.322.9049
Email: lbubala@armstrongteasdale.com
and bsalinas@armstrongteasdale.com

*Attorneys for Plaintiff*

```
            FILED        _____ RECEIVED
            ENTERED      _____ SERVED ON
                         COUNSEL/PARTIES OF RECORD

                MAY 2 5 2012

            CLERK US DISTRICT COURT
              DISTRICT OF NEVADA
     BY:  _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| BRANCH BANKING & TRUST CO., <br><br> Plaintiff, <br> vs. <br><br> BIG STUFF STORAGE LLC; MARY C. MILLER; JOHN A. SCHOPF, JR.; WENDY AUSLEN SCHOPF; and CITY OF RENO, <br><br> Defendants. | Case No. 3:12-cv-00279-___-_____ <br><br> ORDER <br> 1. GRANTING EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND APPOINTMENT OF A RECEIVER, <br><br> AND <br><br> 2. TO SHOW CAUSE WHY THE APPOINTMENT SHOULD NOT BE CONFIRMED AND A PRELIMINARY INJUNCTION ISSUED |

On May 24, 2012, Branch Banking & Trust Co. ("BB&T" or "Lender") filed an emergency motion for a temporary restraining order to stop the immediate and irreparable injury, loss, or damage to BB&T's interests in the real and personal property of the Big Stuff Storage (the "Collateral," "Mortgaged Property," or "Property"), a storage property at 7875 North Virginia Street in Reno, Nevada, owned and operated by its borrower, Defendant Big Stuff Storage LLC ("Big Stuff"), and for the appointment of Cheryl Evans of Coldwell Banker Commercial Premier Brokers (collectively, "Receiver") as receiver of the Collateral. FRCP 65, LR 7-5, NRS 32.010, and NRS 107.100.

A hearing was held with appearances noted on the record. The court, having reviewed the record and considered the arguments of counsel, finds good cause and grants the motion as follows:

APPOINTMENT OF A RECIEVER

1. The Court appoints the Receiver to take control of the Mortgaged Property, together with all related documents, books, records, papers, and accounts of Borrower to preserve, protect, secure and maintain the Mortgaged Property. In furtherance of the foregoing, the Receiver is

- 1 -

authorized to take possession of (a) all the books and records, ledgers, financial statements, financial reports, and all other business records, including, but not limited to, information contained on computers and any and all software and websites, and telephone or internet reservation systems (including toll free telephone numbers and all domain names) relating thereto (including user IDs and passwords); (b) all banking records, statements, budgets, rent rolls, personnel records, real estate tax bills, construction and other bonds, (c) all governmental agency permits and approvals, including without limitation, all liquor licenses, building permits and conditional use permits; and (d) all advertisements and marketing materials, plans, surveys, architectural, contractor and subcontractor agreements, and architectural and engineering drawings for the buildings and improvements, pertaining to the Mortgaged Property, wherever located, as the Receiver deems necessary for the proper administration, management or control of the receivership estate.

2. Within thirty (30) days of taking control and possession under this Order, the Receiver shall file an inventory itemizing all personal property of which he has taken control or possession and shall promptly file supplemental inventories of any personal property subsequently coming into the receivership estate as needed.

3. The Receiver is hereby authorized to hire, employ, retain, and terminate consultants, brokers, professionals, independent contractors, and any other personnel or employees, which the Receiver deems necessary to assist her in the discharge of her duties, who shall be authorized to act on behalf of the Receiver as the Receiver's authorized representatives, with the full force and power of the Receiver to carry out the duties and obligations of the Receiver as set forth herein, including without limitation, obtaining turnover, possession and control of the Property and all books, records and accounts of Defendant and any other receivership property in accordance with the provisions of this Order. The Receiver is further authorized to retain legal counsel to represent her and assist her with the performance of her duties as set forth herein if the Receiver feels that legal counsel is reasonably necessary to assist with the performance of his duties hereunder. All reasonable expenses incurred in connection with the hiring and retention of such personnel and counsel shall be expenses of, and paid for by, the Property.

Case 10-50471-gwz   Doc 150   Entered 05/31/12 09:04:27   Page 6 of 15

4.      Notwithstanding any provision in this Order to the contrary, Receiver does not assume and is not obligated to assume and will not be obliged to pay, perform or otherwise discharge any Employment-Related Liability (as defined below) of Borrower. Borrower is and will be solely and exclusively liable with respect to all Employment-Related Liabilities. Without limiting the generality of the foregoing, "Employment-Related Liabilities" includes all of Borrower's liabilities to any former or current employee in any way related to the employee's employment with or separation from Borrower, including, but not limited to, any claims: (a) for salary, wages, commissions, bonuses, benefits, vacation, or any other form of compensation; (b) arising out of any acts or omissions of Borrower or any of their agents or representatives with respect to any benefit plan, employee practices or employee programs, including employee claims of discrimination, retaliation or other wrongful conduct or discharge decisions; (c) severance liabilities; (d) obligations under employment contracts or any other related agreements with employees; (e) any change of control amounts payable to any employees; (f) all liabilities under the Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C. 2101 et seq., or similar state statute or regulation and (g) any other statutory or common law claim.

5.      The Receiver may obtain and pay any reasonable price for any lawful license, including but not limited to a liquor license, and, to the extent permitted by law, exercise the privileges of any existing license issued in connection with the Mortgaged Property or any business transacted with respect to it, until further order of the Court, and to do all things necessary to protect and maintain said licenses, including, but not limited to, taking such license in the name of the Receiver personally or a nominee of the Receiver personally. With respect to any existing liquor license related to the Mortgaged Property, including, without limitation, any liquor license that may currently be held by Borrower for the Mortgaged Property, the Receiver may promptly apply, if the Receiver deems it necessary or preferable, to the appropriate authorities to transfer the existing license or to obtain an amended or new liquor license to sell alcoholic beverages as an incident to the operation of the Mortgaged Property. All existing licenses relating to the operation of the Mortgaged Property, including but not limited to the alcohol and beverage license(s), issued in the name of

1   Borrower are hereby assigned to the Receiver. The Receiver is empowered to operate under the
2   existing liquor license related to the Mortgaged Property.
3        6.      The Receiver has the right to negotiate, extend, terminate, modify, ratify or enter into
4   leases, contracts, including, without limitation, franchise agreements, contracts to provide security,
5   janitorial, leasing, utility or other services including the hiring and terminating of staff and full time
6   and part time employees related to the Mortgaged Property and to pay for those services as an
7   expense of the Mortgaged Property. The Receiver must insure that the Mortgaged Property is
8   operated in accordance with state, local, and federal laws.
9        7.      The Receiver may charge for his services a receivership fee of $500.00 per month. In
10  addition, the Receiver and the management company designated herein shall be reimbursed for all
11  expenses incurred on behalf of the Mortgaged Property pursuant to the terms hereof. The Receiver,
12  his management company, his consultants, agents, employees, legal counsel, and professionals may
13  be paid on a monthly basis. To be paid on a monthly basis, the Receiver must file a statement of
14  account with the Court and serve a copy on all parties each month for the time and expense incurred
15  in the preceding calendar month. At the Receiver's discretion, this statement of account may
16  accompany the monthly reports filed by the Receiver pursuant to this Order. Once the Receiver's
17  statement of account has been filed and served, the Receiver may pay the statement from the cash
18  generated by the operation of the Mortgaged Property. The Receiver's receipt of interim fees is
19  subject to final review and approval by this Court. This Court retains jurisdiction to award a greater
20  or lesser amount as the full, fair, and final value of the Receiver's services.
21       8.      The Receiver shall operate, lease, manage and control the Mortgaged Property,
22  conduct its business and incur the expenses necessary in such operation, leasing, management,
23  control, and conduct in the ordinary and usual course of business, and shall do all things and incur the
24  risks and obligations ordinarily incurred by owners, managers, and operators of similar properties.
25  No risks or obligations incurred by the Receiver in the operation, leasing, management, control and
26  conduct shall be the personal risk or obligation of the Receiver, but shall be a risk or obligation of the
27  receivership estate.
28

1    9.  The Receiver is authorized to open and maintain checking and savings accounts and
2 the like, in the name of the receivership estate, in a federally insured lending institution, and shall pay
3 only those bills which are reasonable and necessary for the operation of the Mortgaged Property. The
4 Receiver shall obtain Plaintiff's approval before making any capital expenditures (other than ordinary
5 and necessary trade accounts payable), or payments other than those ordinarily and necessarily
6 incurred in the operation of the Mortgaged Property. After reserving sufficient funds as the Receiver
7 deems reasonable in accordance with the approved operating budget, the Receiver may pay at his
8 discretion, or upon instructions from Plaintiff, any remaining amounts to Plaintiff to reduce the
9 amounts due, owing and unpaid by Borrower and reduce the accrual of interest on such amounts.

10   10.  The Receiver shall not be responsible for payment of any real property taxes, utility
11 bills, unpaid payroll expenses or other unpaid invoices for services or utilities incurred by Borrower,
12 or their agents, or for the benefit of the Mortgaged Property before the Receiver's taking possession
13 of the Mortgaged Property, provided, however, the Receiver is authorized to pay operating and other
14 expenses of the Mortgaged Property incurred before the date of this Order if the payment is
15 reasonably necessary or beneficial to enable the Receiver to continue to operate the Mortgaged
16 Property as determined by the Receiver in his sole discretion, including, without limitation, utility
17 bills dated before the date of this Order. Any utility company providing services to the Mortgaged
18 Property, including gas, electricity, water, sewer, trash collection, telephone, communications,
19 internet, pay per view television, satellite television, cable or similar services, shall be prohibited
20 from discontinuing service to the Mortgaged Property based upon unpaid bills incurred by or on
21 behalf of Borrower, or any of their respective agents. Further, such utilities shall transfer any
22 deposits held by the utility to the exclusive control of the Receiver and shall be prohibited from
23 demanding that the Receiver deposit additional funds in advance to maintain or secure such services.
24 Utility companies are prohibited from discontinuing service while the new receivership accounts are
25 in process of being established. No insurance company shall be permitted to terminate coverage or
26 refuse coverage for the Mortgaged Property based upon prior unpaid premiums, claims history or
27 because of the appointment of the Receiver pursuant to this Order. In addition, no insurance
28

1  company shall be allowed to put in place more stringent payment arrangements during the term of the
2  receivership pursuant to this Order.

3     11.    The Receiver is authorized to issue demands, in the name of the receivership estate,
4  upon public utilities that the Receiver determines provide services to the Mortgaged Property and to
5  transfer such services, together with any deposits held by the utility, to the exclusive control of the
6  Receiver.

7     12.    The Receiver is authorized to issue demands in the name of the receivership upon the
8  U.S. Postal Service, or any other public or private entity, to gain exclusive possession and control of
9  such postal boxes as may have been used by Borrower, or any of their respective agents for the
10 receipt of rent, income, and other mail related to the Mortgaged Property. The Receiver is authorized
11 to open all mail addressed to Borrower, its agents, employees or representatives, or all persons or
12 entities acting under or in concert with Borrower received at the Mortgaged Property. The Receiver
13 is authorized to make copies of such received mail and then forward the mail to Borrower, its agents,
14 employees, or representatives, or all persons or entities acting under or in concert with Borrower.

15     13.    The Receiver is authorized to demand deposits, including guest deposits, from
16 available leases, rents or other revenue and other records, compute the amount of deposits collected
17 by Borrower or its agents from tenants, if applicable for security, cleaning, hazardous waste or any
18 other purposes, and demand the immediate surrender to the Receiver of such deposits by Borrower or
19 its agents who collected them, and to take appropriate action to enforce the turnover of such deposits.

20     14.    The Receiver is authorized to expend sums from the receivership estate which, in the
21 Receiver's opinion and subject to Plaintiff's approval, are required to make the Mortgaged Property
22 suitable for hotel guests.

23     15.    The Receiver shall prepare on a monthly basis, beginning thirty (30) days after his
24 appointment and for so long as the Mortgaged Property shall remain in his possession or care, reports
25 setting forth all receipts and disbursements, cash flow, changes in the assets in his charge, claims
26 against the assets in his charge, and other relevant operational issues that have occurred during the
27 preceding month. The Receiver is directed to file such reports with the Clerk of this Court. The
28

1  Receiver shall serve a copy of this report on the attorneys of record for the parties and any other
2  interested parties who request the same.

3  16. The Receiver shall have no responsibility for filing federal or state income tax returns
4  or federal or state payroll tax returns and shall not be responsible for paying any unpaid federal and
5  state payroll taxes and expenses of Borrower. The responsibility for such filings and payments lies
6  exclusively with Borrower and its agents, employees, and representatives.

7  17. Subject to Plaintiff's approval, if required pursuant to Plaintiff's loan documents (the
8  "Loan Documents"), the Receiver, as managing agent for the Mortgaged Property, is authorized to
9  negotiate, make, enter into, or modify contracts or agreements affecting any part or all of the
10 Mortgaged Property, and to immediately terminate any existing contract, agreement or instrument
11 which is not, in the Receiver's sole and absolute discretion, deemed commercially reasonable or
12 beneficial to the operation of the Mortgaged Property.

13 18. Any security or other deposits which any tenants, lessees, or hotel guests have paid to
14 Borrower or its agents and which are not paid to the Receiver and over which the Receiver has no
15 control, shall be obligations of Borrower and may not be refunded by the Receiver without a prior
16 order of the Court.

17 19. The Receiver may demand, collect, and receive all rents, revenues, receivables and
18 profits for the Mortgaged Property or any part of it that are owed, unpaid, and uncollected as of the
19 effective date of this Order, or hereafter to become due and in connection therewith may endorse
20 checks payable to Borrower, or to the extent related to the Mortgaged Property.

21 20. The Receiver is authorized to place the Mortgaged Property for sale on the market,
22 retain any reputable hotel broker or advertisers or obtain a marketing analysis in connection
23 therewith, and undertake any and all other duties associated with selling the Mortgaged Property,
24 including executing documents necessary for consummation of a sale, provided that such marketing,
25 retention and other contracts relating to such sale and the terms thereof shall be subject to Plaintiff's
26 prior approval, and with such sale being subject to Court approval.

27
28

21. Subject to further order of this Court, the Receiver may institute and prosecute all suits as may be reasonably necessary in the Receiver's judgment to protect the Mortgaged Property, and to defend all such suits and actions as may be instituted against the Receiver.

22. To the extent there are insufficient funds in the receivership estate to cover receivership expenses, the Receiver may borrow from Plaintiff, with or without the necessity of issuing Receiver's Certificates, such funds as may be required by the Receiver to cover operating expenses of the receivership, including but not limited to the Receiver's fees and costs, as determined by the Receiver in his sole discretion, provided that Plaintiff consents to making such advances. Plaintiff may add the amount of such advances to the amounts due under the Loan Documents, and shall be entitled to earn interest on such advances at the rate then payable on the Loan, and such advances shall be secured in the same manner as advances to protect Plaintiff's collateral under the deed of trust (Exhibit 2 to the complaint in this action).

23. Subject to the provisions of paragraph 12 above, the Receiver shall hold and retain all money that may come into the Receiver's possession, custody, and control by virtue of his appointment and such funds shall be expended only for the purposes herein authorized and the balance of any funds shall be held by the Receiver pending the further order of this Court or until the sale of the Mortgaged Property under the terms of the Loan Documents.

24. Notwithstanding anything to the contrary in this Order, the Receiver shall not expend or disburse more than $5,000.00 at any one time in excess of the approved operating budget for the Mortgaged Property without Plaintiff's approval, except for emergency or safety repairs to the Mortgaged Property, and nothing in the Court's order shall obligate Plaintiff to lend or disburse any funds or amounts to the Receiver.

25. The Receiver shall maintain adequate insurance over the Mortgaged Property to the same extent and in the same manner as it has heretofore been insured and in compliance with the Loan Documents, or as in the judgment of the Receiver may seem fit and proper, and to cause all presently existing policies to be amended by adding the Receiver and the receivership estate as an additional insured within twenty (20) days of the entry of this Order, with any and all insurance refunds or claims proceeds to be paid to Receiver as part of the receivership assets. If there is either

inadequate insurance or insufficient funds in the receivership estate to procure adequate insurance, the Receiver is directed to immediately take appropriate action to remedy the deficiency and to provide notice to this Court regarding such deficiency. During the period in which the Mortgaged Property is uninsured or underinsured, the Receiver shall not be personally responsible for any claims arising therefore.

26. The Receiver and the parties to this action may, from time to time, on *ex parte* basis or noticed motion on shortened time, petition this Court for instructions with respect to this Order and further orders this Court may hereafter make.

27. No individual or entity may sue the Receiver without first obtaining the permission of this Court.

28. Upon receipt of a copy of a recorded trustee's deed upon foreclosure or written notice from Plaintiff that Borrower has cured the defaults existing under the Loan Documents or that Plaintiff has accepted a deed in lieu of foreclosure, the Receiver shall, without further order of the Court, turn over possession of the Mortgaged Property to the successful purchaser, Borrower, or Plaintiff, respectively. The Receiver and the successful purchaser, Borrower, or Plaintiff, as the case may be, may agree to extend the time in which Receiver is to continue to operate the Mortgaged Property in accordance with this Order for up to an additional thirty (30) days.

29. No later than sixty (60) days after the receivership terminates, the Receiver shall file and serve a motion for approval of the Receiver's final report and account and exoneration of the Receiver's bond. The Receiver shall give notice of such motion to all persons of whom the Receiver is aware who have potential claims against receivership property. The motion to approve the final report and account and for discharge of the Receiver shall contain a declaration or declarations (a) stating what was done during the receivership; (b) certifying the accuracy of the final accounting; (c) stating the basis for the termination of the receivership (such as foreclosure or reinstatement); and (d) stating the basis for an order for the distribution of any surplus or payment of any deficit. In addition, the motion shall contain a summary of the receivership accounting, which shall include (a) the total revenues received; (b) the total expenditures identified and enumerated by major categories; (c) the net amount of any surplus or deficit; and (d) evidence of necessary supporting facts.

30. In the event that a bankruptcy case is filed by any Defendant during the pendency of this Receivership, Defendant must give notice of sale to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

31. Upon receipt of notice that a bankruptcy has been filed which includes as part of the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

i) Immediately Turn Over the Property if No Relief From Stay or Motion to Dismiss the Bankruptcy will be sought:

The Receiver shall immediately contact the Plaintiff, and determine whether that party intends to move in the Bankruptcy Court for an order for: (a) relief from the automatic stay or motion to dismiss, or (b) relief from the Receiver's obligation to turn over the property (11 U.S.C. Section 543). If the Plaintiff indicates no intention to file any such a motion within 10 days, then the Receiver shall immediately turn over the property (to the trustee in bankruptcy, or if one has not been appointed, then to the Defendant), and otherwise comply with 11 U.S.C. Section 543.

ii) Remain in Possession and Preserve the Property, Pending Resolution of Motion for Relief From Stay and Turnover, or Motion to Dismiss:

If the Plaintiff notifies the Receiver of its intention to file one of the motions discussed above, then the Receiver is authorized to remain in possession and preserve the property pending the outcome of the motion(s). The Receiver's authority to preserve the property is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may make disbursements, but only those which are necessary to preserve and protect the property. The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would effect a material change in circumstances of the property.

32. The Receiver is authorized to retain legal counsel to assist the Receiver with the Bankruptcy Proceedings.

33. The Receivership may be terminated by the Receiver or by Plaintiff as provided in this paragraph. Immediately upon the reinstatement or full payoff of the loan secured by the Deed of Trust, upon the completion of a valid foreclosure sale of the Property, or upon the acquisition of the Property by Plaintiff or any assignee by deed in lieu of foreclosure, and without further Order of this

- 10 -

1  Court, the Receiver shall relinquish possession and control of the Collateral to the appropriate party.
2  Upon relinquishing possession and control of the Collateral, the Receiver shall be relieved from all
3  further duties, liabilities and responsibilities relating to the Property and shall thereafter submit the
4  Receiver's final accounting and report for Court approval and discharge.
5      34. The Receiver shall post a bond of $ _1,000.00_ .

### TEMPORARY RESTRAINING ORDER

A temporary restraining order directing Big Stuff and its respective agents, representatives, assignees, and employees to: (a) immediately turn over possession of the Property to the receiver, including any security deposits, prepaid rent, other rental or lease payments, and funds in property management bank accounts for the Real Property Collateral; (b) immediately turn over to the receiver all keys, books, documents, and records relating to the Real Property Collateral and advise the receiver of federal taxpayer identification numbers relating to the Real Property Collateral; (c) immediately advise the receiver about the nature and extent of insurance coverage on the Real Property Collateral and immediately name the receiver as an additional insured on each insurance policy on the Property without otherwise canceling, reducing, or modifying the insurance coverage; (d) refrain and be enjoined from: (i) committing or permitting any waste on the Real Property Collateral or any act on the Real Property Collateral in violation of law or removing, encumbering, or otherwise disposing of any fixtures on the Real Property Collateral; (ii) demanding, collecting, or in any other way diverting or using any of the rents from the Real Property Collateral; (iii) interfering in any manner with the discharge of the receiver's duties; (iv) selling, transferring, disposing, encumbering, or concealing any portion of the Real Property Collateral, including but not limited to, all buildings and other similar structures, without a prior court order; and (v) doing any act that will impair the preservation of the Real Property Collateral or Lender's interest in the Real Property Collateral.

The Plaintiff shall post a bond of $ _1,000.00_ .

### ORDER TO SHOW CAUSE

Defendants are ordered to show cause as to why the appointment of the Receiver should not be confirmed and why the temporary restraining orders should not be converted to preliminary

- 11 -

1  injunction. A hearing will be held on the __11__ date of __June__, 2012, at __11__ a.m./~~p.m.~~ Any
2  responsive briefs and supporting papers shall be filed on or before the __6th__ date of __June__, 2012.

IT IS SO ORDERED:

*[signature]*

UNITED STATES DISTRICT JUDGE
UNITED STATES MAGISTRATE JUDGE

Dated: __5/25/12__

- 12 -